UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVAGAS DRAIN,

    Plaintiff,

v.                                            Case No. 1:13-cv-1326
                                            Hon. Robert J. Jonker

GAIL BURKE, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on motions for summary judgment filed by defendants Ann Karp, Sherri Gregurek, Karen Rosa and Kenneth McKee (docket no. 13); defendants Gail Burke, M.D. and Dennis Behler, P.A. (docket no. 24); and defendant Lisa Wojciechowski (docket no. 31).

### I.    Plaintiff's complaint

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections (MDOC), filed a complaint naming the following defendants employed at the MDOC's Bellamy Creek Correctional Facility (IBC): Gail Burke, M.D.; Dennis Behler, R.N.; Lisa Wojciechowski, L.P.N.; Ann M. Karp, R.N.; Sherri Gregurek, R.N.; Karen Rosa, R.N.; and Kenneth McKee, Warden. Compl. (docket no. 1 at pp. ID## 2-3). Plaintiff's complaint set forth the following "statement of claim" (in his words):

> **Dennis Behler RN** on or about 6/30/13 terminated my medication permanetly stating that I don't have asthma, a life long respitory disease I've been diagnosed with since 9 months of age: frequently hospitalized at a very young age

>and more recently has been kept under control with the frequent use of an inhaler throughout the day an night. **Karen Rosa RN** on or about 6/l8/l3, the same day my meds' were restricted, denied me medical treatment when I came to the window of the health-care building for the use of my restricted medication and had to be evaluated.  AT which time I was informed, by medical staff that I was experiencing shortness of breath and expressed the feeling of breathing through a strawe and with audible sounds of wheezing. [she] **Karen Rosa**, listened to my chest told me that I wasn't having an asthma attack and sent me back to the unit housing #4.  On or about 6/18/13 **DR. Gail Burke** and **Dennis Behler PA/NB**, **Lisa Wojciechowski**, restricted my med's due to a said change of policy as to replace inhalers after 90 days instead of the 30 day policy in which Ive' abided since my incarceration here at (IBC) Since October 2010, I have never had an issue with or accusations of abuse of medication until the policy change which was the cause of the restriction irregardless of my respirational needs. **Sherri Gregutek  RN** is responcible for not allowing me to receive medication  when asked for on a medical call out.  All persons on medical staff have peoven over a period of time in some way or action to be deliberatly indifferent to my medical needs, and to show a disregard for my health over-all.

Compl. (docket no. 1 at p. ID# 4) (emphasis added).  Plaintiff's complaint incorporated a supporting "Memorandum of Law," which included additional facts regarding his medical history of asthma and his past use of an inhaler.  Memorandum of Law (docket no. 3 at pp. ID## 18-20).  Plaintiff seeks declaratory, compensatory and injunctive relief under 42 U.S.C. § 1983 for deliberate indifference to a serious medical condition and a state law tort of "imputed negligence, including malpractice." *Id.* at p. ID# 5; Memorandum at pp. ID## 38-39.

## II. Plaintiff failed to state a claim against Warden McKee

While plaintiff listed Warden McKee in the caption of his complaint, he did not allege that this defendant performed any particular action which violated his rights under 42 U.S.C. § 1983 or under state law.  The only reference to Warden McKee appears in plaintiff's Memorandum, in which plaintiff stated that he filed a grievance on June 11, 2013 which named defendants Wojciechowski, Behler, Karp, Gregurek, Rosa, Burke and McKee "FOR [sic] failure to

2

provide adequate health treatment, for my asthma for which I have had for the last 34 years or so of my life."  Memorandum at p. ID# 25.[1]

Plaintiff's claim against Warden McKee is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  To determine whether a complaint states a claim on which relief can be granted under § 1915(e)(2)(B)(ii), the court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).  While the pleading standard under Fed. R. Civ. P. 8 does not require "detailed factual allegations," the rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*, citing *Twombly*, 550 U.S. at 555.

It is well established that "*pro se* complaints are held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the duty to be "less stringent" with

---

[1] As discussed in § III, *infra*, plaintiff did not name any of the defendants in the June 11, 2013 grievance.  However, for the limited purpose of reviewing the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will view plaintiff's statement regarding the grievance as true.

*pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979).

Here, plaintiff has not alleged that Warden McKee engaged in any particular wrongdoing. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). *See also*, *Webb v. Caruso*, 1:06-cv-3, 2006 WL 416261 at *4 (W.D. Mich. Feb. 22, 2006) ("[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints"). Furthermore, because plaintiff's complaint fails to include any allegation against Warden McKee, the complaint fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, plaintiff's claim against Warden McKee should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Defendants' motions for summary judgment

#### A. Legal standard

All defendants seek summary judgment on plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Exhaustion of administrative remedies

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### C. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

        **D.**     **Plaintiff's grievances**

        **1.**     **Grievance no. IBC-13-05-1312-12F3 ("1312")**

Grievance no. 1312 involved an incident which occurred on April 30, 2013. Grievance No. 1312 (docket no. 27-1 at p. ID#151). In this grievance, plaintiff requested a refill for asthma medicine, stated that he needed a new inhaler every month, stated that he was now "allowed" only one inhaler every three months, and stated that he was not abusing the medicine. *Id.* Notably, this grievance was *resolved* on or about May 7, 2013:

> The grievant was interviewed and the medical record was reviewed. The Grievant stated that he was out of his inhaler. The medical record indicated that he was using inhalers more than he should be by the refills he was receiving. The Grievant was called out and evaluated by the MP [medical provider] and a new inhaler was issued with instructions on its use.
>
>         *    *    *
>
> The grievance is resolved. The Grievant acknowledged the instructions that were given to him.

Step I Grievance Response (docket no. 27-1 at p. ID# 152). The resolution of grievance no. 1312-12F3 is supported by the record, which does not reflect that plaintiff pursued any further appeals of this grievance.

7

### 2. Grievance no. IBC-13-06-1737-28a ("1737-28a")

Defendants point out that plaintiff has filed only one Step III appeal while incarcerated at IBC, that being grievance no. 1737-28a. MDOC Prisoner Step III Grievance Report (docket no. 14-3 at p. ID# 90). This grievance involved an incident which occurred on June 11, 2013, in which plaintiff sought a refill of his asthma inhaler, stated that his inhaler lasted only 32 to 33 days, stated that he "had a sitdown with medical staff concerning this issue and was notified that [he] may be an exception to the rule [i.e., the 'new' three month refill policy on inhalers]," and denied that he abused the medicine. Grievance no. 1737-28a (docket no. 14-3 at p. ID# 94). The grievance was originally identified as no. IBC -13-06-1737-12F3, was rejected as duplicative of grievance no. 1312, and then re-assigned as grievance no. 1737-28a. *See* Grievance no. 1737-28a (docket no. 14-3 at p. ID# 94); Step I Grievance Receipt (docket no. 14-3 at p. ID# 96); Grievance Rejection Letter (docket no. 14-3 at p. ID# 95); Policy Directive 03.02.130 ¶ G.1. (stating that a grievance may be rejected if it "raises issues that are duplicative of those raised in another grievance filed by the grievant"). The record reflects that plaintiff appealed grievance no. 1737-28a through Step III, where the rejection was upheld. Grievance no. 1737-28a (docket no. 14-3 at pp. ID## 91-93).

### E. Plaintiff did not properly exhaust his claims against defendants Dr. Burke, R.N. Behler, L.P.N. Wojciechowski, R.N. Karp, R.N. Gregurek, R.N. Rosa, and Warden McKee

The record reflects that while plaintiff appealed grievance no. 1737-28a through Step III, he did not properly exhaust the grievance, because the grievance was rejected at all levels as duplicative of grievance no. 1312. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. It appears that the grievance process worked in this instance, with plaintiff's use of his asthma

medication and his ability to refill that medication being resolved in grievance no. 1312 being resolved on May 7, 2013. Approximately one month later, plaintiff filed grievance no. 1737-28a, which the MDOC considered as duplicative of grievance no. 1312. In his response, plaintiff contends that the MDOC improperly rejected his grievances. Plaintiff's contention is unavailing. Whether the MDOC improperly rejected plaintiff's grievance is not an issue for the Court. *See Jones v. Bonevelle*, No. 11-2242, slip op. at pp. 3-4 (6th Cir. March 30, 2012) ("As the district court concluded, Jones's argument that his grievances were improperly rejected should have been made during the grievance process, not in his present civil rights action").[2]

The Court notes two additional grounds for determining that plaintiff failed to properly exhaust grievance no. 1737-28a. First, contrary to Policy Directive 03.02.130 ¶ R, plaintiff did not name any particular person grieved. Grievance no. 1737-28a states only that plaintiff wrote a medical kite and had met with unnamed "medical staff" on the issue. *See* Grievance no. 1737-28a (docket no. 14-3 at p. ID# 94); *Stone v. Crompton*, No. 1:11-cv-821, 2012 WL 3779935 at *3 (Report and Recommendation) (W.D. Mich. Aug. 2, 2012), adopted in 2012 WL 3779930 (Order) (Aug. 31, 2012) (simply referring to a correctional facility's "health care staff" fails to name a particular party grieved, does not comply with Policy Directive 03.02.130 ¶ R, and fails to properly exhaust a claim against any particular person).

Second, grievance no. 1737-28a could not support plaintiff's complaint. This grievance involved a request for a medical refill on June 11, 2013. Plaintiff's complaint, however,, seeks relief for alleged acts which occurred several days later, between June 18, 2013 and June 30,

---

[2] A copy of the *Jones v. Bonevelle* order appears is attached to the "MDOC Defendants' Reply Brief" (docket no. 18-2 at pp. ID## 113-16).

2013. In short, the acts alleged in the complaint had not even occurred when plaintiff filed grievance no. 1737-28a.

Viewing the facts in the light most favorable to the non-movant (plaintiff), the Court concludes that plaintiff did not properly exhaust his claims against defendants. Accordingly, defendants' motions for summary judgment should be granted.

### IV. Plaintiff's state law claims

Plaintiff's complaint also seeks relief for a state law tort of "imputed negligence, including malpractice." *Id.* at p. ID# 5; Memorandum at pp. ID## 38-39. Here, the Court exercised its supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367, presumably because those claims were intimately related to the alleged § 1983 violation. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the undersigned has concluded that plaintiff's federal claims

should be dismissed. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. If the Court adopts this conclusion, then it should dismiss the state law claims asserted against defendants.

### V. Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendants Karp, Gregurek, Rosa, and McKee (docket no. 13), defendants Burke and Behler (docket no. 24) and defendant Wojciechowski (docket no. 31) be **GRANTED**.

I further recommend that, in the alternative to granting his motion for summary judgment, defendant McKee be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I further recommend that plaintiff's state law claims be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this action be **TERMINATED**.


Dated: February 3, 2015          /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).